**S.R. PRODUCTS, Appellant,**

v.

**GERRITY, Fire Chief, Appellee.**

[Cite as *S.R. Products v. Gerrity,* 156 Ohio App.3d 150, 2004-Ohio-472.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 82735.

Decided Feb. 5, 2004.

McDonald Hopkins Company, L.P.A., and Jerome W. Cook, for appellant.

Subodh Chandra, Director of Law, and Dennis A. Matejka, Assistant City Prosecutor, for appellee.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} The appellant, S.R. Products, appeals from the judgment of the trial court, which affirmed the decision of the Ohio Board of Building Appeals ("OBBA") upholding the validity of a citation issued by the city of Cleveland Fire Department. Upon our review of the arguments of the parties and the record presented, we affirm the judgment of the trial court for the reasons set forth below.

{¶ 2} In 1997, S.R. Products, which employs five people, purchased a building at 13309–13311 Union Avenue in Cleveland. The purchase price of the building was to be $130,000, plus $44,000 in machinery and inventory, for a total purchase price of $174,000. S.R. Products intended to manufacture asphalt roof coating and other associated products at this location; however, before purchasing the building, it applied to the city of Cleveland for a "certificate of occupancy." S.R. Products wanted to know how much work the building would need to bring it up to code.

{¶ 3} In the certificate of occupancy, S.R. Products stated that the proposed use of the building was to be the "same" as that of the previous owners. Records obtained and reviewed by the city's fire department revealed that in 1963, the previous owners used the building for the storage and sale of cement products and water-based asphalt products. Based on these records, the fire department, under Fire Chief Robert M. Derrit, authorized a certificate of occupancy classifying the building as F–1, "Factory Moderate Hazard." The fire department required S.R. Products to install a fire alarm/detection system but did not require the installation of a fire sprinkler/suppression system. S.R. Products complied with all building and fire department recommendations, and a certificate of occupancy was issued.

{¶ 4} In 2001, representatives of the city's fire prevention bureau inspected the Union Avenue building. The inspection, along with a chemical inventory list that S.R. Products provided, revealed the use and storage of large quantities of hazardous materials and substances, including xylene, mineral spirits, kerosene, and acetone. A separate compound, composed of 35 percent mineral spirits and 65 percent asphalt, was stored in a bulk amount of 180,000 gallons. All of these materials are classified by the Ohio Fire Code as highly flammable and combusti-

ble, unlike the water-based asphalt the Fire Department thought was being produced and stored on the premises.

{¶ 5} On January 3, 2000, the BOCA Fire Prevention Code was adopted by the state of Ohio as the Ohio Fire Code, Ohio Adm.Code 1301:7-3-01. On July 3, 2002, the Cleveland Fire Department issued a citation to S.R. Products, citing the following Ohio Fire Code violations:

{¶ 6} "(1) The storage of flammable and combustible liquids exceeded the exempt amounts. The amount of these items was sufficient to classify the structure as a high hazard H-2 group in violation of OAC section 1301:7-7-28(A)(4) FM-2801.4.

{¶ 7} "(2) The storage of corrosives exceeded the exempt amounts. The amount of these items was sufficient to cause the structure to be classified a high hazard H-4 Use Group in violation of OAC section 1301:7-7-32(A)(3) FM-3201.3.

{¶ 8} "(3) The facility lacked a sprinkler system, which is required in a high hazard occupancy in violation of OAC section 1301:7-7-05(D)(2) F-503.2.

{¶ 9} "(4) S.R. Products dispensed and used hazardous materials in excess of the exempt amounts in violation of OAC section 1301:7-7-23(R)(1) FM-2318.1.1.

{¶ 10} "(5) Floor and ceiling assemblies had been penetrated in violation of OAC section 1301:7-7-03(C)(1) F-303.1.

{¶ 11} "(6) There is no Hazardous Materials Management Plan for the facility in violation of OAC section 1301:7-7-03(C)(1) F-303.1.

{¶ 12} "(7) Locked gates at the exit doors create an unsafe means of egress in violation of OAC section 1301:7-7-06(A)(2) F-601.2.

{¶ 13} "(8) Process-mixing vessels were not reviewed by a design professional prior to installation in violation of OAC section 1301:7-7-23(S)(3)(a) F-2319.3.1."

{¶ 14} S.R. Products was fined and ordered to comply with the Ohio Fire Code within 30 days.

{¶ 15} The fire prevention bureau changed the classification of S.R. Products to H-2, "High Hazard Group." This classification required S.R. Products to install a fire sprinkler/suppression system at an estimated cost of $250,000. The current Cleveland Fire Chief, Kevin Gerrity, determined that S.R. Products, without the installation of the fire suppression/sprinkler system, posed a distinct hazard to life and property because of the amounts of hazardous combustible and flammable materials stored at the building. S.R. Products is located in a residential neighborhood surrounded by the Alexander Hamilton Junior High School, Bethesda Church, Taylor Automotive Center, Alexander Hamilton Recreation Center and Natatorium, and various residential homes.

{¶ 16} On August 1, 2002, S.R. Products appealed from the citation to the Ohio Board of Building Appeals ("OBBA"). On September 26, 2002, an evidentiary hearing was conducted by the OBBA. At the hearing, S.R. Products produced evidence and argued that the Union Avenue building, under different owners, had been producing flammable petroleum-based asphalt materials since the 1970s. S.R. Products claimed that the fire department, either by mistake or affirmation, signed off on the certificate of occupancy, knowing that S.R. Products was manufacturing flammable petroleum-based asphalt products. It further contended that because the fire department did not require the installation of a sprinkler system in 1997, it should be estopped from requiring S.R. Products to install one now.

{¶ 17} On November 19, 2002, the OBBA upheld the fire department's citation in its entirety. S.R. Products appealed from the OBBA decision to the Cuyahoga County Common Pleas Court. On March 12, 2003, the trial court affirmed the decision of the OBBA, holding that the OBBA decision was supported by a preponderance of the evidence. On April 7, 2003, S.R. Products filed this timely appeal.

{¶ 18} The appellant presents two assignments of error for our review. Both assignments of error will be addressed together, since they are interrelated.

"I. The trial court erred when it failed to even consider appellant's first assignment of error regarding the purely legal issue of whether the Board of Building Appeals erred as a matter of law by holding that *Foster v. City of Westlake Board of Zoning Appeals,* 1990 WL 193177 (Ohio App. 8 Dist.) was dispositive of the issues presented."

"II. The trial court erred in affirming the decision of the Board of Building Appeals where the city of Cleveland patently failed to satisfy [its] burden to provide a preponderance of evidence supporting the reasonableness and lawfulness of the decision."

{¶ 19} A review of a decision of the Board of Building Appeals is specifically governed by R.C. 3781.031. *Plummer v. Waltz* (Aug. 17, 1995), Paulding App. No. 11–95–1, 1995 WL 505933. R.C. 3781.031 states:

{¶ 20} "Notwithstanding the provisions of Chapter 119. of the Revised Code relating to adjudication hearings * * * a party adversely affected by an order issued following such adjudication hearing may appeal to the court of common pleas of the county in which he is a resident or in which the premises affected by such an order is located; the court in such case shall not be confined to the record as certified to it by the agency but any party may produce additional evidence and the court shall hear the matter upon such record and such additional evidence as is introduced by any party; and the court shall not affirm

the order of the agency unless the preponderance of the evidence before it supports the reasonableness and lawfulness of such order * * *."

{¶ 21} The plain language of R.C. 3781.031 clearly requires the fire department to establish by a preponderance of the evidence the reasonableness and lawfulness of the OBBA's order. *Copeland Corp. v. Ohio Dept. of Indus. Relations* (1988), 53 Ohio App.3d 23, 25, 557 N.E.2d 813.

{¶ 22} An appellate court, reviewing the judgment of the court of common pleas, considers only questions of law and does not weigh the evidence. An appellate court will not substitute its judgment for that of the administrative agency or the court of common pleas, unless this court finds that there is not a preponderance of reliable evidence to support the board's decision. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. Within the ambit of questions of law is included whether the common pleas court abused its discretion. *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735· N.E.2d 433. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 23} The appellant argues that the trial court erred in not considering whether the OBBA erred as a matter of law in finding *Foster v. Westlake Bd. of Zoning Appeals* (Dec. 6, 1990), Cuyahoga App. No. 57740, 1990 WL 193177, dispositive of the appellant's estoppel claim against the fire department. The appellant claims that the facts in *Foster* differ from the facts of this case, and the doctrine of estoppel should preclude the fire department from requiring the appellant to install a fire suppression system.

{¶ 24} In *Foster*, this court was presented with a homeowner who had relied upon the erroneous advice of a building inspector regarding the proper location of the air conditioning condensers. The building inspector had no authority to approve the location or to provide the homeowner with a variance. The homeowner installed the condensers in the location recommended by the building inspector. The homeowner was notified by the city of Westlake that the location of the condensers violated the city's zoning ordinances. The city then refused to grant the homeowner a variance and demanded that the homeowner move the condensers at a cost of $5,000 in order to comply with the zoning ordinances. The homeowner filed suit, claiming that the city should be estopped from making him move the condensers to another location because he had relied, to his detriment, on the advice of a city official. This court rejected the homeowner's estoppel claim and held:

{¶ 25} A municipality is not estopped from enforcing a zoning ordinance simply because a person relied upon the erroneous advice of a building inspector; (2) a

person who seeks the advice from a government official assumes the risk that the information may be incorrect; (3) the building inspector was not authorized under the city's zoning ordinance to vary its application; and (4) the homeowner had constructive notice that the building inspector lacked the proper authority to grant a variance from the zoning regulations.

{¶ 26} The appellant claims that the former fire chief, Robert M. Derrit, who authorized the certificate of occupancy issued to the appellant in 1997, had the actual authority to require that the appellant install only a fire detection system instead of a fire sprinkler system. The appellant further argues that this actual authority makes the reasoning found in *Foster* inapplicable to the facts in this case, and an estoppel claim should apply, preventing the fire department from requiring the installation of a sprinkler system.

{¶ 27} Generally, the doctrine of equitable estoppel is applicable to municipal corporations, although not applied with the same restrictions as in matters arising between private individuals. *Kilko v. Cleveland* (1951), 102 N.E.2d 476, 60 Ohio Law Abs. 561. Equitable estoppel precludes a municipal corporation from asserting certain facts when that party, by its conduct, has induced another, to his detriment, to change his position in good faith reliance on the conduct. *Shapely, Inc. v. Norwood Earnings Tax Bd. of Appeals* (1984), 20 Ohio App.3d 164, 165, 20 OBR 198, 485 N.E.2d 273, citing *State ex rel. Cities Serv. Oil Co. v. Orteca* (1980), 63 Ohio St.2d 295, 299, 17 O.O.3d 189, 409 N.E.2d 1018. A municipality may, in some instances, be estopped by the act of its officers if done within the scope and in the course of their authority or employment. *Kilko,* supra; see, also, *Franklin Twp. v. Meadows* (1998), 130 Ohio App.3d 704, 711, 720 N.E.2d 1011.

{¶ 28} However, the doctrine of equitable estoppel does not apply against a state or its agencies in the exercise of a governmental function. *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 17 OBR 64, 477 N.E.2d 623. In performing those duties that are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability that is enjoyed by the state itself. *Wooster v. Arbenz* (1927), 116 Ohio St. 281, 156 N.E. 210.

{¶ 29} Furthermore, estoppel will not arise if the act done is in violation of law. *Kilko,* 102 N.E.2d 476, 60 Ohio Law Abs. at 565. Likewise, it is well settled that a mistake does not provide a basis for the application of the doctrine

of equitable estoppel. *Five Oaks Neighborhood Improvement Assn. v. Bd. of Zoning Appeals* (Feb. 27, 1984), Montgomery App. No. CA 8467. A person who seeks information from the government must assume the risk that the public advisor might be wrong. *Ruozzo v. Giles* (1982), 6 Ohio App.3d 8, 6 OBR 31, 451 N.E.2d 519; see, also, *Richfield v. Nagy* (Mar. 5, 1986), Summit App. No. 12300, 1986 WL 2914.

{¶ 30} We find the reasoning applied by this court in *Foster* to be applicable to the instant case for several reasons. First, although Fire Chief Derrit had the actual authority in 1997 to require a fire detection system instead of a fire sprinkler system, we hold that this actual authority will not support a claim of estoppel against the fire department when dealing with violations of the Ohio Fire Code.

{¶ 31} Ohio Adm.Code 1301:7–1–01(B) FM–100.2 states that the purpose of the fire code provisions is to prescribe minimum requirements and controls to safeguard life, property, or public from the hazards of fire and explosion arising from the storage, handling or use of substances, materials, or devices and from conditions hazardous to life, property, or public welfare in the use or occupancy of buildings, structures, sheds, tents, lots, or premises.

{¶ 32} Unlike the purposes for zoning ordinances, which are primarily initiated for aesthetics and to prevent annoyance, the Ohio Fire Code is intended to prevent conditions hazardous to life and property and to promote the public welfare; therefore, even though the former fire chief had the actual authority to recommend a detection system over a suppression system, this authority would not estop the fire department from requiring a fire suppression system in the future if the fire official proves by a preponderance of the evidence that the system is needed to combat a distinct hazard to life and property.

{¶ 33} Ohio Adm.Code 1301:7–1–02(A) FM–101.1 states that the fire code is applicable to new and existing buildings and conditions, except that existing conditions not in strict compliance with the requirements of this code shall be permitted to continue where the exceptions do not constitute a distinct hazard to life or property in the opinion of the fire official. If a distinct hazard to life or property cannot be proven by the fire official by a preponderance of the evidence, the provisions of this code shall not apply to an existing building or condition.

{¶ 34} Furthermore, Ohio Adm.Code 1301:7–1–02(F) FM–101.5 provides that a fire official may require the installation of fire safety devices or systems, such as fire extinguishers, fire alarms, fire detection devices, sprinklers, or similar systems, where, in his judgment, they are necessary to provide safety to life and property.

{¶ 35} Moreover, given the case law cited above, the prevention of fires is a governmental function that makes the doctrine of estoppel inapplicable to the appellee, even if the city official makes a mistake or gives erroneous advice on which the claimant relies.

{¶ 36} Finally, the appellant stated on the certificate of occupancy that the intended use of the building would be the "same" as that of the previous owners. The fire department produced evidence at the OBBA hearing that, to its best knowledge, the previous owner made water-based asphalt products and not petroleum-based products, as does the appellant. It was upon this information that the fire department required the appellant to install only a fire detection system. The burden was clearly on the appellant to clarify and state with particularity on the certificate of occupancy what it intended to manufacture at the Union Avenue building.

█ {¶ 37} Next, the appellant claims that the doctrine of laches should preclude the fire department from requiring it to install a fire suppression system.

█ {¶ 38} As a general rule, the doctrine of laches does not apply to bar a claim made by a governmental unit. *Lee v. Sturges* (1889), 46 Ohio St. 153, 176, 19 N.E. 560; see, also, *Haba v. Cuff* (1963), 28 O.O.2d. 266, 201 N.E.2d 343; *Richfield v. Nagy* (Mar. 5, 1986), Summit App. No. 12300, 1986 WL 2914. The Ohio Supreme Court, in *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630, stated that the government cannot be estopped from its duty to protect public welfare when public officials failed to act as expeditiously as possible. The doctrine of laches is generally no defense to a suit by the government to enforce a public right or to protect a public interest. Id.

{¶ 39} The Ohio Supreme Court has allowed a limited exception to the general rule concerning laches in *State ex rel. Chester Twp. Bd. of Trustees v. Makowski* (1984), 12 Ohio St.3d 94, 12 OBR 82, 465 N.E.2d 453; however, the exception does not apply to the case at bar.

{¶ 40} We find the appellant's laches claim inapplicable to the instant matter. First, the Ohio Fire Code does not contain a provision that states that the provisions of the fire code can be applied only prospectively. This argument would be nonsensical. The fire code provisions specifically apply to new and existing buildings; therefore, the provisions of the fire code can be applied retrospectively. Any business, including the appellant's, could change fire classifications due to expansion and growth, causing more chemicals to be stored in greater amounts. Provisions of the fire code may also change as technological changes improve fire safety. In the future, the fire department may require more fire protection equipment, as authorized by the fire code.

{¶ 41} Finally, the appellant argues that the fire department failed to satisfy its burden to provide a preponderance of the evidence supporting the reasonableness and lawfulness of the OBBA's order to uphold the fire department's citation. The appellant specifically claims that the fire department failed to show that the Union Avenue building was a distinct hazard to life and property to require the installation of a fire sprinkler system. The following evidence was produced at the OBBA hearing:

{¶ 42} First, the Union Avenue Building owned by the appellant is located in a residential neighborhood. Across the street, 67 feet away, are residential homes and storefronts. On the building's east side, Bethesda Church is only ten feet away, and Murtis Taylor Multi Service Center is 42 feet away from the southeast corner of the building. The Alexander Hamilton Recreation Center and Natatorium is 40 feet away from the left rear of the building, and Alexander Hamilton Junior High School is 150 feet away from the left side of the building.

{¶ 43} Second, the chemical inventory list provided by the appellant clearly establishes that the appellant's business should be classified as an H–2 High Hazard Group for combustible and flammable materials and an H–4 High Hazard Group for corrosive materials, according to Ohio Adm.Code 1301:7–7–32(A)(3) and 1301:7–7–28(A)(4). Various flammable and combustible chemicals, including xylene, mineral spirits, kerosene, and acetone, were stored in excess amounts of what the Ohio Administrative Code permitted for an F–1 Moderate Hazard rating. A separate compound, composed of 35 percent mineral spirits and 65 percent asphalt, was stored in a bulk amount of 180,000 gallons.

{¶ 44} Third, the Ohio Basic Building Code, Section 904.05, mandates that any use group with a rating of "H" must have an automatic fire suppression system provided throughout all potential fire areas. This mandate is in addition to the Fire Chief's recommendation that the appellant install a fire sprinkler system because he believed the appellant posed a distinct hazard to life and property given the location of the building and the chemicals produced and stored inside.

{¶ 45} We find that the trial court did not abuse its discretion in finding that the OBBA's decision upholding the fire department citation was supported by a preponderance of the evidence. Furthermore, the OBBA's order affirming the fire department's citation is reasonable and lawful given the above facts in this case. Both assignments of error presented by the appellant are overruled.

{¶ 46} The judgment is affirmed.

Judgment affirmed.

JAMES J. SWEENEY and COLLEEN CONWAY COONEY, JJ., concur.