OPINION *Page 2 
 I. Facts {¶ 1} Appellant Lima/ Allen County Building Department appeals the judgment of the Allen County Court of Common Pleas reversing the decision of the Ohio Board of Building Appeals, which upheld the building department's determination that permits were required to make alterations on several billboard signs owned by appellee Lamar Outdoor Advertising of Toledo. For reasons that follow, we affirm.
 {¶ 2} On December 5, 2005, William Brown, Chief Building Official for the Lima/ Allen County Building Department (hereinafter "building department"), was informed that appellee Lamar Outdoor Advertising of Toledo (hereinafter "Lamar") had cranes on South Main Street in Lima, Ohio and were changing a billboard sign. Brown investigated the construction and discovered that a new sign face had been installed with a modified method of attachment.
 {¶ 3} After his investigation, Brown contacted Lamar by phone and explained that a permit was required along with a sealed drawing for each of the sign types to be altered. On February 22, 2006, Brown issued a letter informing Lamar that it was required to obtain a building permit for each billboard that was to be re-designed.
 {¶ 4} Lamar disagreed with Brown's interpretation of the permit requirements and, instead, filed a notice of appeal to the Ohio Board of Building Appeals on March 15, *Page 3 
2006. An appeal hearing was held on April 19, 2006, and, on April 26, 2006, the board affirmed the building department's decision requiring a permit.
 {¶ 5} On May 8, 2006, Lamar appealed to the Allen County Court of Common Pleas. The court held evidentiary hearings on August 30 and October 10, 2006. Lamar and the building department both filed post-hearing briefs on November 9 and December 7 of 2006, respectively.
 {¶ 6} On January 8, 2007, after hearing testimony from both parties and reviewing the briefs, the court issued its decision reversing the Ohio Board of Building Appeals determination that permits were required for the billboard sign modifications.
 {¶ 7} When rendering its judgment, the trial court explained what it perceived as the essential issues in the case:
 From this court's perspective, certain policy and individual rights are at stake. First is the idea that "we're from the government, and we're here to help — to protect you". Secondly, is the idea and philosophy today of continual government interference in everything and everybody's life. And third is the idea that individuals and/or companies should not be burdened with unnecessary and unrealistic rules and interpretations of rules and/or laws that are not practical or realistic.
 {¶ 8} The building department now appeals the trial court's judgment and asserts three assignments of error.[1] *Page 4 
 II. Standard of Review {¶ 9} For appeals pursuant to R.C. 3781.03, this court can review and decide the correctness of the common pleas court judgment. "However, our inquiry is limited to a determination of whether, as a matter of law, there did exist a preponderance of evidence to support the reasonableness and lawfulness of the board's order. Our function does not involve a determination as to the weight of the evidence."Copeland Corp. v. Ohio Dept. of Indust. Relations Division of Factoryand Bldg. Inspection (1988), 53 Ohio App.3d 23, 26, 557 N.E.2d 813
(citations omitted).
 {¶ 10} An appellate court reviews the judgment of the court of common pleas considering questions of law, including whether the court abused its discretion. S.R. Products v. Gerrity, 156 Ohio App.3d 150,2004-Ohio-472, 805 N.E.2d 104, ¶ 22, citing Henley v. Youngstown Bd. ofZoning Appeals, 90 Ohio St.3d 142, 148, 2000-Ohio-493, 735 N.E.2d 433. An abuse of discretion is more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 11} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."CE. Morris Co. v. Foley Const. Co. (1978), *Page 5 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus. See also In reEmrick, 3d Dist. No. 1-06-17, 2006-Ohio-3235, ¶ 8. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, at paragraph one of the syllabus.
 {¶ 12} "[A]n appellate court will not reverse a judgment on the basis of insufficient evidence that is supported by some competent, credible evidence." Bell v. Joecken, 9th Dist. No. 20705, 2002-Ohio-1644, at *2, citing C.E. Morris Co., 54 Ohio St.2d 279. "This standard is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent reversal." Id., citing Barkley v. Barkley (1997),119 Ohio App.3d 155, 159, 694 N.E.2d 989.
 III. Analysis ASSIGNMENT OF ERROR NO. I THE LOWER COURT ERRED AS A MATTER OF LAW WHEN IT DID NOT UPHOLD THE PERMIT REQUIREMENT WHEN STRUCTURAL MEMBERS AND LOAD BEARING SUPPORTS WERE REMOVED AND REPLACED ON THE BILLBOARD STRUCTURE.
 {¶ 13} In its first assignment of error, the building department argues that the trial court misinterpreted the building code when it determined that the billboard repairs made by Lamar were minor repairs and a building permit was not required. Lamar contends *Page 6 
that the trial court had sufficient additional evidence presented at the hearings to conclude that the repairs were `minor' as used in the building code.
 {¶ 14} Section 105.2.2 of the Ohio Building Code provides the following:
 Repairs. Minor repairs to structures may be made without application or notice to the building official. Such repairs shall not include the cutting away of any wall, partition or portion thereof, the removal or cutting of any structural beam or load bearing support, or the removal or change of any required means of egress, or rearrangement of parts of a structure affecting the egress requirements * * *
 {¶ 15} The building inspector argued and the board of building appeals agreed that the work done by Lamar required a permit. After two evidentiary hearings and briefs, the trial court found that the work done by Lamar was a `minor repair'; and therefore, a building permit was not required.
 {¶ 16} The building department argues that we should review the trial court's interpretation of section 105.2.2 of the Ohio building code de novo, since it is a question of law. Lamar argues that this court has a more limited review in administrative appeals pursuant to R.C. 119.12
and cites Copeland Corp., 53 Ohio App.3d 23. We agree with Lamar.
 {¶ 17} In Copeland we concluded that our standard of review in appeals from the trial court when it acts pursuant to R.C. 119.12 for cases involving the Ohio Building Board of Appeals is limited to: "whether, as a matter of law, there did exist a preponderance of evidence to support the reasonableness and lawfulness of the board's order."53 Ohio App.3d at 26. We also explained the trial court's role: "R.C. 119.12 *Page 7 
grants broad authority for the court to treat the administrative appeal as a civil trial. R.C. 3781.031 provides wide latitude for the common pleas court to exercise its independent judgment." Id.
 {¶ 18} We have reviewed the entire record in this case, including the initial board of building appeals hearing, the testimony at the trial court's evidentiary hearings, and the briefs. The record reveals that the board of building appeals heard testimony from Mr. Brown, on behalf of the building department, and Mr. Schoen, on behalf of Lamar. The board considered the arguments but ultimately concluded, 5-0, that a building permit was required.
 {¶ 19} The trial court conducted evidentiary hearings pursuant to its authority under R.C. 3781.031. As a result, the trial court had additional evidence to consider, which led to its decision to reverse the board of building appeals. For clarity of analysis, we outline the important portions of the testimony before the trial court.
Testimony of Jon Odom
 {¶ 20} The trial court first heard testimony from Jon Odom, owner and manager of Productivity Fabricators, a structural steel fabrication company with ninety percent of its sales in outdoor billboard signs. (Aug. 30, 2006 Tr. at 5-6). Mr. Odom obtained a Bachelor of Science degree in industrial engineering from Purdue University and had *Page 8 
twenty-one years of experience in the billboard industry. (Id. at 7). Mr. Odom testified on behalf of Lamar.[2]
 {¶ 21} Mr. Odom testified that the `supporting structure' of the billboard sign consisted of "the two upright beams." (Id. at 9). Mr. Odom identified the new attachment devices utilized, called stringers.[3] He testified that iron stringers are the "newest method of attaching face panels to sign structures," and that the new method was safer because the stringers are stronger than the old angle irons and help stiffen the face panel. (Id. at 12). Mr. Odom also testified that the three-sprit[4] replacement panels were safer because they are stronger than the older two-sprit panels, and, further, that if the new panels were smaller, then the wind load capacity would be greater. (Id. at 17-18).
 {¶ 22} Mr. Odom also opined that the addition of stringers did not alter the sign structure and constituted a minor repair or simple maintenance. (Id. at 12). He further testified that the stringers cost approximately forty dollars each, but the sign's total value was approximately six or eight thousand dollars. (Id. at 15).
Testimony of William Brown
 {¶ 23} The court reconvened its evidentiary hearing on October 10, 2006. The court first heard testimony from William L. Brown, the Lima/ Allen County Building *Page 9 
Inspector, on behalf of the building department. Mr. Brown testified that he had ten years of experience in a construction field, five years experience as a building inspector, passed a certification test, and has continuing education requirements. (Oct. 10, 2006 Tr. at 4).
 {¶ 24} Mr. Brown testified that he inspected the billboard in question and related his observations: "[a]ll of the sign had been replaced except the vertical columns. There were six (6) channel iron columns. They were — found buried in the foundation. They remained. All of the structure above the foundation excepting those vertical columns was new." (Id. at 12). He testified that the previous sign face was "bolted directly to the vertical columns by means of angle iron." (Id. at 15).
 {¶ 25} When the court inquired of Mr. Brown about the safety of the new attachment method compared to the old method, Mr. Brown stated: "I think they both work. They're both — it's just different designs. My concern with this new design certainly would be uplift where the other one wouldn't be subject to it. If the new one wasn't properly secure, it could lift up and become a sail * * *." (Id. at 16). As a result of his investigation, Mr. Brown concluded a permit was required, because the sign had been materially or substantially altered. (Id. at 17).
 {¶ 26} Mr. Brown also testified that he was willing to accommodate Lamar and allow it to submit design drawings for only the five or six different sign types, not each of the 168 signs in Allen County. (Id. at 20, 102). He agreed with Lamar that changing the *Page 10 
face of a sign or repairing a sign to its original condition would require no permit. (Id. at 28).
Testimony of Gary Ungerer
 {¶ 27} Following Mr. Brown's testimony, the building department called Gary Ungerer, owner of an architectural engineering firm in Ottawa, Ohio and vice president of Building Official Support Services based in Toledo, Ohio. (Id. at 61). Prior to these positions, Ungerer served as the chief building official for the city of Oregon for two years and seven years for Lucas County. (Id.). Ungerer was certified by the International Code Council as an instructor of building codes and taught them throughout the State. (Id. at 62). Ungerer is a registered architect in the State, a certified building inspector, a certified plans examiner, and a certified building inspector. (Id.).
 {¶ 28} Mr. Ungerer testified that he had inspected the billboard sign on South Main Street with Mr. Brown, and was of the opinion that the work done by Lamar required a permit since the structure was altered. (Id. at 63, 67). Ungerer also indicated that he would require Lamar to submit certified plans in order to obtain a permit. (Id. at 68).
Testimony of Willard Lawler
 {¶ 29} The building department next called Willard Lawler, a structural engineer with LBJ, Inc. and a registered professional engineer since 1994. (Id. at 80). Mr. Lawler obtained a Bachelor of Science in civil engineering from the University of Nebraska and *Page 11 
a Masters in civil engineering from the University of Notre Dame. (Id.). After viewing photographs of the sign and visiting the site, Mr. Lawler concluded that the change was: "* * * pretty significant. I mean it's — it's a significant change in, you know, how the sign was attached to the supports. * * * you know, the load path has been altered where the sign is connected." (Id. at 84). Mr. Lawler further testified that if he were going to seal a drawing of the sign he would need to inspect the connection points to ensure they were adequate to transfer the load to the sign supports and inspect the supports to make sure they could resist the loads. (Id. at 85).
Testimony of James Churilla
 {¶ 30} Following the testimony of Lawler, Lamar called James Churilla, vice president and general manager of advertising for Lamar. (Id. at 97). Mr. Churilla has served as vice president for nine years, has a total of twelve years with Lamar, and has a total of nineteen years in the billboard industry. (Id.). Mr. Churilla testified that he serves on the state legislative committee working with local municipalities on permitting. (Id. at 101).
 {¶ 31} According to Churilla, the size of the new sign panel was decreased by 17%, which decreases the sign's weight. (Id. at 103-04). He testified that Lamar is now buying face panels with three sprits, instead of two, which strengthens the sign face and increases the wind load capacity. (Id. at 104). He also testified that the design drawing illustrated that the face panel was attached by four clips, two at the top of the panel and *Page 12 
two at the bottom. (Id. at 108). This combination, according to Churilla, resulted in a wind load capacity of 130 miles per hour. (Id.).
 {¶ 32} Mr. Churilla explained that Lamar was maintaining and repairing older signs the company obtained through an acquisition. (Id. at 109). He also testified that some of the existing billboards already had stringers, and the only change required for the new face panels was an adjustment of the stringers on the vertical supports. (Id. at 115, 117). Mr. Churilla explained: "[i]t's very normal in our company to do that. And depending on the manufacturer and the type of face we have to move stringers up and down. We've done it for years. I mean this is really nothing new." (Id. at 117). He further testified that he had never been required to obtain a permit to make these changes in any of his nineteen counties in Ohio, or West Virginia, Kentucky, or Maryland. (Id. at 125). He also indicated that the stringers cost approximately fifty to seventy-five dollars each, but the total cost of a billboard can range from five to thirty thousand dollars. (Id. at 126).
 {¶ 33} Mr. Churilla indicated that the city of Lima/ Allen County has taken approximately five weeks to issue a permit. (Id. at 132). He also testified that Lamar does not have design drawings for some of the signs since they are older and were acquired through other companies. (Id. at 132-33).
 {¶ 34} Our review of the evidence reveals an obvious disagreement on whether the work done was a `minor repair' or a `substantial alteration' and conflicting testimony on *Page 13 
the issue. "Our function does not involve the determination as to the weight of the evidence," and "a credibility call between conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the finder of fact."Copeland, 53 Ohio App.3d at 26; State v. Twitty, 2d Dist. No. 19944,2004-Ohio-65, ¶ 11, citing State v. Awan (1986), 22 Ohio St.3d 120, 123,489 N.E.2d 277.
 {¶ 35} Mr. Brown and Mr. Ungerer both testified on behalf of the building department concluding that the sign changes were a substantial alteration that required a permit. These men cited the building code and their past experience enforcing the code in support of their position. On the other hand, Mr. Odom and Mr. Churilla testified on behalf of Lamar that the work was general maintenance or a minor repair. These men testified that these repairs occurred regularly in the industry without a permit ever being required in the past in several other jurisdictions.
 {¶ 36} The trial court found the testimony of the men with actual billboard industry experience more credible and accurate than the testimony and opinions of the building inspectors and engineers. (Oct. 10, 2006 Tr. at 100). In its judgment entry, the trial court even noted that Mr. Brown did not have any experience in the billboard industry.
 {¶ 37} Lamar also presented evidence to show that the repairs were of minimal cost compared to the cost of the billboard structure. In fact, the testimony revealed that the stringers were approximately forty dollars each, whereas the cost of the billboard *Page 14 
could range from five to thirty thousand dollars. Based on this evidence, which was not before the Board of Building Appeals, the trial court could conclude that the repair was `minor.'
 {¶ 38} In addition, Lamar presented evidence that the sign repairs increased safety. Both Churilla and Odom testified that the new signs were lighter, sturdier, and had an increased wind load capacity. In fact, their testimony revealed that the wind load capacity of the new signs significantly exceeded mandatory requirements. Furthermore, the trial court noted in its journal entry that the city could only speculate regarding the sign's dangers, and, when pressed, Mr. Brown claimed that he was sure that the new method of attachment was approved. As one of his primary concerns, Mr. Brown raised the issue of whether the signs would lift off the stringers with strong winds. In response, Lamar produced evidence that the clips mounting the sprits to the stringers were also bolted or welded to prevent uplift. When faced with speculative safety concerns and testimony refuting those concerns, the trial court believed Lamar's testimony that it had, in fact, taken steps to ensure safety.
 {¶ 39} Therefore, based on our review of the record, we cannot conclude, as a matter of law, that a preponderance of the evidence supports a finding that the board's order was reasonable and lawful. The trial court exercised its authority to hold evidentiary hearings. During those hearings more evidence was gathered and a judgment *Page 15 
rendered. We cannot say the trial court erred as a matter of law, nor can we say that it abused its discretion.
 {¶ 40} The building department's first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE LOWER COURT ERRED BY REVERSING THE BOARD OF BUILDING APPEALS AND THE JUDGMENT ENTRY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 41} In its second assignment of error the building department argues that the trial court's judgment was against the manifest weight of the evidence. Lamar argues that the judgment was not against the manifest weight of the evidence, and the court properly exercised its discretion when weighing the evidence. We concur with Lamar.
 {¶ 42} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."CE. Morris Co., 54 Ohio St.2d 279; In re Emrick, 2006-Ohio-3235, at ¶ 8. "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." DeHass,10 Ohio St.2d 230.
 {¶ 43} We have reviewed the entire record and conclude that some competent evidence existed to support the trial court's judgment, and therefore, decline to reverse. As we have already explained and outlined infra, the court had testimonial evidence on both sides as to the nature of the repairs, their legal significance, and the industry practice. The court exercised its discretion as the trier of fact to judge credibility and *Page 16 
weigh evidence. Since the court had competent evidence, exercised its independent judgment as R.C. 3781.031 allows, and properly exercised its discretion to weigh evidence and credibility, we cannot say that its decision was against the manifest weight of the evidence.
 {¶ 44} The building department's second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III THE LOWER COURT ERRED IN FINDING THAT THE APPELLEE PRESENTED SUFFICIENT EVIDENCE THAT THE PERMIT REQUIREMENT WOULD BE UNREASONABLE AND BURDENSOME.
 {¶ 45} In its third assignment of error, the building department argues that the evidence was insufficient to establish that a permit requirement was unreasonable and burdensome.
 {¶ 46} "[A]n appellate court will not reverse a judgment on the basis of insufficient evidence that is supported by some competent, credible evidence." Joecken, 2002-Ohio-1644, at *2, citing CE. Morris Co.,54 Ohio St.2d 279. "This standard is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent reversal." Id., citing Barkley, 119 Ohio App.3d at 159.
 {¶ 47} The trial court found that the permit requirement was unreasonable and burdensome based on three grounds: (1) the number of signs in Allen County subject to the permit requirement; (2) the cumulative cost of the design drawings and permits; and *Page 17 
(3) the time for the permit to issue. The record shows uncontested evidence that Lamar owned 168 signs in Allen County. The record reveals that the cost of each permit would be around thirty dollars. The record reveals that design drawings would need to be sealed and submitted, at minimum, for five to six sign designs. The record also reveals that it can take up to five weeks for a permit to issue.
 {¶ 48} Accordingly, we conclude that there was some competent credible evidence before the trial court, which would allow it to conclude that the permit requirement was unreasonable and burdensome. Therefore, we will not reverse its judgment.
 {¶ 49} The building department's third assignment of error is, therefore, overruled.
 {¶ 50} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW and WILLAMOWSKI, JJ., concur.
[1] In its brief before this Court, the building department also stated that the `precise result' of the case was "envisioned by the lower court as evidenced by its remarks referring to big government, regulation, and policy determinations. Surely this type of approach can not be upheld." (Appellant's Brief at 16). Frankly, this Court shares appellant's concerns as to whether these remarks, made by the trial court, as trier of fact, at the outset of its opinion, were either relevant or appropriate. However, to the extent that the building department is suggesting that the trial judge was biased or prejudiced, the Ohio Supreme Court is the proper venue for such complaints. Section5(C), Article IV, Ohio Constitution; R.C. 2701.03. See e.g. Beer v.Griffith (1978), 54 Ohio St.2d 440, 377 N.E.2d 775 (per curiam). It should also be noted that no affidavit of prejudice was filed during the proceedings before the trial court.
[2] The court noted that normally the building department would call witnesses first since the department bears the burden of proof in the case; however, the court allowed Lamar to call Jon Odom first due to a scheduling conflict.
[3] Stringers are metal angle iron pieces that are mounted horizontally to the billboard's buried vertical support columns.
[4] Sprits are the vertical supports that attach to the sign face. The sprits are attached to the stringers utilizing a metal z-clip, which secures the sign face to the buried vertical support columns. (Oct. 10, 2006 Tr. at 45). *Page 1